# EXHIBIT A

E-SERVED Garrett Circuit Court 3/25/2024 8:49 AM System SystemEnvelope:15862512

E-FILED; Garrett Circuit Court
Docket: 3/25/2024 8:49 AM; Submission: 3/25/2024 8:49 AM
Envelope: 15862512

MARYLAND JUDICIARY

**CIRCUIT COURT FOR GARRETT COUNTY, MARYLAND**

203 S. 4th Street; P O Box 447, Oakland, Maryland, 21550
Phone: 301-334-1937
Fax: 301-334-5017

Civil: 301-334-1938
Criminal: 301-334-5016
Domestic: 301-334-1935
Fiscal: 301-334-1944
Foreclosure/Trust: 301-334-1943
Juvenile/Adoption: 301-334-1987
Land: 301-334-1941
TTY for Deaf dial MD Relay 711

**To:** AMAZON.COM, INC.
SERVE ON:
CORPORATION SERVICES COMPANY, RES. AGT.
300 DESCHUTES WAY SW
SUITE 208 MC-CSCI
TUMWATER, WA 98501

**Case Number:** **C-11-CV-24-000033**
**Other Reference Number(s):**
**Child Support Enforcement Number:**

**FOREMOST INS CO GRAND RAPIDS, MICHGAN A/S/O COURTNEY LOHRI, ET AL VS. WATERMARK FIXTURES LLC, ET AL.**

Issue Date: 3/25/2024

## WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

FOREMOST INS CO GRAND RAPIDS, MICHGAN A/S/O COURTNEY LOHRI, ET AL
5600 Beech Tree Lane
Caledonia, MI 49316

This summons is effective for service only if served within 60 days after the date it is issued.

William L. Bittinger
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.
It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

## SHERIFF'S RETURN
(please print)

To: AMAZON.COM, INC.

______________________ ID# __________ of the ______________________
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served ______________________
Name of person served

on ______________________ at ______________________
Date of service Location of service

______________________ by ______________________ with the following:
Manner of service

- ☐ Summons
- ☐ Complaint ______________________
- ☐ Motions
- ☐ Petition and Show Cause Order
- ☐ Other ______________________ Please specify
- ☐ Counter-Complaint
- ☐ Domestic Case Information Report
- ☐ Financial Statement
- ☐ Interrogatories

(2) Was unable to serve because:

- ☐ Moved left no forwarding address
- ☐ No such address
- ☐ Address not in jurisdiction
- ☐ Other ______________________ Please specify

Sheriff fee: $ ______________________ ☐ waived by ______________________

______________________ ______________________
Date Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:

1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.

2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

E-FILED; Garrett Circuit Court
Docket: 3/22/2024 3:23 PM; Submission: 3/22/2024 3:23 PM
Envelope: 158[?]73

IN THE CIRCUIT COURT FOR Garrett County (City/County)

# CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

## DIRECTIONS

***Plaintiff:*** This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).

***Defendant:*** You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☒ PLAINTIFF ☐ DEFENDANT CASE NUMBER C-11-CV-24-000033 (Clerk to insert)

**CASE NAME:** FOREMOST INS. CO. a/s/o Courtney Lohri (Plaintiff) vs. Watermark Fixtures, LLC, et al (Defendant)

PARTY'S NAME: FOREMOST INS. CO. a/s/o Courtney Lohri PHONE: ______

PARTY'S ADDRESS: 5600 Beech Tree Lane, Caledonia, MI 49316

PARTY'S E-MAIL: ______

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: Robert D. Anbinder, Attorney at Law PHONE: 410-916-7469

PARTY'S ATTORNEY'S ADDRESS: PO Box 65354, Baltimore, MD 21209

PARTY'S ATTORNEY'S E-MAIL: rdaattorney@gmail.com

**JURY DEMAND?** ☒ Yes ☐ No

**RELATED CASE PENDING?** ☐ Yes ☒ No If yes, Case #(s), if known: ______

**ANTICIPATED LENGTH OF TRIAL?:** ______ hours 4 days

## PLEADING TYPE

**New Case:** ☒ Original ☐ Administrative Appeal ☐ Appeal

**Existing Case:** ☐ Post-Judgment ☐ Amendment

***If filing in an existing case,*** *skip Case Category/ Subcategory section – go to Relief section.*

## IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint – DOB of Youngest Plt:______
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☒ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt
☐ Fraud
☐ Government
☐ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
☐ Commercial
☐ Residential
☐ Currency or Vehicle
☐ Deed of Trust
☐ Land Installments
☐ Lien
☐ Mortgage
☐ Right of Redemption
☐ Statement Condo
☐ Forfeiture of Property / Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Worker's Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance
☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. – Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

**IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)**

- ☐ Abatement
- ☐ Administrative Action
- ☐ Appointment of Receiver
- ☐ Arbitration
- ☐ Asset Determination
- ☐ Attachment b/f Judgment
- ☐ Cease & Desist Order
- ☐ Condemn Bldg
- ☐ Contempt
- ☒ Court Costs/Fees
- ☒ Damages-Compensatory
- ☐ Damages-Punitive
- ☐ Earnings Withholding
- ☐ Enrollment
- ☐ Expungement
- ☐ Financial Exploitation
- ☐ Findings of Fact
- ☐ Foreclosure
- ☐ Injunction
- ☐ Judgment-Affidavit
- ☐ Judgment-Attorney Fees
- ☐ Judgment-Confessed
- ☐ Judgment-Consent
- ☐ Judgment-Declaratory
- ☐ Judgment-Default
- ☐ Judgment-Interest
- ☐ Judgment-Summary
- ☒ Liability
- ☐ Oral Examination
- ☐ Order
- ☐ Ownership of Property
- ☐ Partition of Property
- ☐ Peace Order
- ☐ Possession
- ☐ Production of Records
- ☐ Quarantine/Isolation Order
- ☐ Reinstatement of Employment
- ☐ Return of Property
- ☐ Sale of Property
- ☐ Specific Performance
- ☐ Writ-Error Coram Nobis
- ☐ Writ-Execution
- ☐ Writ-Garnish Property
- ☐ Writ-Garnish Wages
- ☐ Writ-Habeas Corpus
- ☐ Writ-Mandamus
- ☐ Writ-Possession

*If you indicated* ***Liability*** *above,* mark one of the following. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded. ☒ Liability is not conceded, but is not seriously in dispute. ☐ Liability is seriously in dispute.

**MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)**

☐ Under $10,000 ☐ $10,000 - $30,000 ☐ $30,000 - $100,000 ☐ Over $100,000

☐ Medical Bills $ ____________ ☐ Wage Loss $ ____________ ☒ Property Damages $ 631,393.59

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION**

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

A. Mediation ☐ Yes ☒ No

B. Arbitration ☐ Yes ☒ No

C. Settlement Conference ☒ Yes ☐ No

D. Neutral Evaluation ☐ Yes ☒ No

**SPECIAL REQUIREMENTS**

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

**ESTIMATED LENGTH OF TRIAL**

*With the exception of Baltimore County and Baltimore City, please fill in the estimated* ***LENGTH OF TRIAL.***

***(Case will be tracked accordingly)***

☐ 1/2 day of trial or less ☐ 3 days of trial time

☐ 1 day of trial time ☒ More than 3 days of trial time

☐ 2 days of trial time

**BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM**

***For all jurisdictions,*** *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited** - Trial within 7 months of Defendant's response ☐ **Standard** - Trial within 18 months of Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response

☐ **Standard** - Trial within 18 months of Defendant's response

***IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.***

## CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ☐ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ Civil-Short | Trial 210 days from first answer. |
| ☐ Civil-Standard | Trial 360 days from first answer. |
| ☐ Custom | Scheduling order entered by individual judge. |
| ☐ Asbestos | Special scheduling order. |
| ☐ Lead Paint | Fill in: Birth Date of youngest plaintiff____________. |
| ☐ Tax Sale Foreclosures | Special scheduling order. |
| ☐ Mortgage Foreclosures | No scheduling order. |

## CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ☐ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

3/22/24
Date

PO Box 65354
Address

Baltimore MD 21209
City State Zip Code

/s Robert D. Anbinder 9212150014
Signature of Attorney / Party Attorney Number

Robert D. Anbinder
Printed Name

E-FILED; Garrett Circuit Court
Docket: 3/22/2024 3:23 PM; Submission: 3/22/2024 3:23 PM
Envelope: 15854873

**IN THE CIRCUIT COURT FOR GARRETT COUNTY**

FOREMOST INSURANCE COMPANY
GRAND RAPIDS, MICHIGAN as subrogee of
COURTNEY LOHRI, affiliates of those
company and any other entity that has received,
directly or indirectly, benefits under Policy
Number 5010133010
5600 Beech Tree Lane
Caledonia, MI 49316

Plaintiff,

Case No.: C-11-CV-24-000033

v.

WATERMARK FIXTURES LLC
219 West First Street
Crowley, LA 70526
**Serve on:**
Nicholas Williams, Res. Agt.
219 West First Street
Crowley, LA 70526

AMAZON.COM, INC.
410 Terry Avenue North
Seattle, WA 98109
**Serve on:**
Corporation Services Company, Res. Agt.
300 Deschutes Way SW
Suite 208 MC-CSC1
Tumwater, WA 98501

Defendants.

**COMPLAINT, DEMAND FOR JUDGMENT AND ELECTION FOR JURY TRIAL**

Plaintiff, Foremost Insurance Group as subrogee of Courtney Lohri, affiliates and any other entity that has received, directly or indirectly, benefits under Policy 5010133010, by and through its undersigned attorney, files this Complaint against Defendants, Watermark Fixtures and Amazon.com, Inc., and avers as follows:

**PARTIES**

1. Plaintiff, Foremost Insurance Group ("Foremost"), is a Delaware corporation with a principal place of business located at 5600 Beech Tree Lane, Caledonia, MI 49316.

2. At all times relevant hereto, Foremost was duly authorized to issue policies of insurance in the State of Maryland.

3. Courtney Lohri is an adult individual who, at all times relevant hereto, owned and occupied the property located at 142 Ridge Run Road, McHenry, MD 21541 (the "Property").

4. At all times relevant hereto, Foremost provided insurance to Ms. Lohri for the Property under Policy Number 5010133010 (the "Policy").

5. Defendant, Watermark Fixtures LLC ("Watermark"), is a Louisiana limited liability company with its principal place of business located at 219 West First Street, Crowley, LA 70526.

6. At all times relevant hereto, Watermark was engaged in the business of, *inter alia*, designing, engineering, manufacturing, constructing, testing, inspecting, assembling, packaging, labeling, marketing, distribution, selling, and otherwise placing into the stream of commerce faucets, including those under the Watermark label, and the specific Watermark faucet that was installed at the Property, which failed and which forms the basis of this action (the "Faucet").

7. Defendant, Amazon.com, Inc. ("Amazon"), is a Delaware corporation with its principal place of business located at 410 Terry Avenue North, Seattle, WA 98109.

8. At all times relevant hereto, Amazon was engaged in the business of, *inter alia*, marketing, packaging, labeling, distributing, selling, and otherwise placing into the stream of commerce faucets, including those under the Watermark label, and the Faucet that was installed at the Property, which failed, and which forms the basis of this action.

## VENUE AND JURISDICTION

9. The court has jurisdiction over the Defendants because the Defendants regularly conduct business in the State of Maryland.

10. Venue is proper in the County of Garrett because the Defendants regularly conduct business in the County of Garrett and the underlying incident occurred in the County of Garrett.

## FACTS

11. Foremost incorporates the allegations in the preceding paragraphs, as if fully set forth at length herein.

12. In 2022, Amazon sold a Watermark Fixtures-brand brass faucet, 99-RE-FC-UB-LD-DM-56, to Ms. Lohri via Amazon.com (the "Faucet").

13. The Faucet was designed, manufactured, and sold by Watermark Fixtures.

14. Ms. Lohri had the Faucet installed at the property.

15. After less than a year of use, on October 12, 2022, the Faucet supply line's brass barb connector circumferentially fractured, resulting in a massive flood throughout the Property.

16. The failure of the Faucet was caused by design and manufacturing defects.

17. The Faucet's brass alloy was composed of 39% zinc.

18. This brass composition, with such excessive zinc content, results in dezincification.

19. Dezincification is a corrosion process that occurs when a high-zinc brass comes into contact with water, and the excessive zinc leeches from the brass alloy, leaving behind a weakened, porous material. These corroded areas then eventually fail by cracking through the dezincified regions.

20. Dezincification will not occur in brasses of less than 15% zinc.

21. A brass composed of 39% zinc cannot be used with water.

22. In addition to the Faucet's brass being made from extremely high amounts of zinc which guaranteed dezincification, the brass also lacked any dezincification-resistant additives.

23. Furthermore, these defects in the material composition of the brass were exacerbated by the insufficient dimensions of the barb connector.

24. Given the Faucet's material composition and design, it was only a matter of time before the Faucet would fail from dezincification and, on October 12, 2022, that's exactly what occurred.

25. The Faucet was in a defective condition at the time it left the possession or control of the Defendants.

26. The defects in the Faucet were not contemplated by the ordinary consumer.

27. The Faucet was unreasonably dangerous to the user or consumer.

28. The Faucet was expected to and did reach the consumer without substantial change in its condition.

29. The Faucet's defects caused the property damages alleged herein.

30. At the time the Faucet was sold, there existed reasonable alternative designs—which were both practical and commercially feasible—and, if the Faucet had those design changes, the risk of failure would have been eliminated.

31. These alternative designs included using any one of hundreds of brass alloys with less zinc as well as the addition of other metals that prevent dezincification.

32. Following the loss of October 12, 2022, Ms. Lohri notified Foremost of the loss and submitted a claim for damages under her aforementioned property insurance policy.

33. Foremost, as the insurer of the property, reimbursed Ms. Lohri for her property loss under the policy of insurance in the amount of $631,393.59.

34. By reason of such payments, the terms of the Policy and by operation of law, Foremost is now subrogated to the rights and remedies of Ms. Ms. Lohri to the extent of its payments.

**COUNT I –STRICT LIABILITY**
**DESIGN AND MANUFACTURING DEFECT**
*(Foremost v. Watermark)*

35. Foremost incorporates the allegations contained in the preceding paragraphs as if fully set forth at length herein.

36. Watermark was and remains engaged in the business of, *inter alia*, designing, manufacturing, distributing, selling and otherwise placing into the stream of commerce water faucets, including the Faucet.

37. Watermark knew the Faucet would be used by members of the general public and knew of the specific purposes for which the Faucet would be utilized.

38. However, the Faucet was not fit for its intended and reasonably foreseeable use.

39. Watermark sold the Faucet in an unreasonably dangerous and defective condition.

40. The Faucet was not modified, changed or materially altered after leaving the custody or control of Watermark.

41. Watermark knew or should have known that the Faucet would reach the end user without substantial change in the condition in which it was originally sold and the Faucet ultimately reached the user in this condition.

42. At all times prior to the incident, the Faucet was used in a normal, ordinary and reasonably foreseeable manner.

43. The defective condition of the Faucet was the direct and proximate cause of the water loss and resulting damage sustained by Ms. Lohri, for which Watermark, acting by and

through its employees, agents, servants, representatives and other designees, each of whom was working within the course and scope of their employment and/or authority for which Watermark is strictly liable by reason of, *inter alia*:

(a) Selling a non-dezincification-resistant brass faucet for use within waterways;

(b) Designing, manufacturing and selling the Faucet with a brass alloy containing 39% zinc;

(c) Designing, manufacturing and selling the Faucet without additives or metals to prevent dezincification and stress corrosion cracking;

(d) Designing, manufacturing and selling the Faucet in a condition susceptible to corrosion during normal and expected use;

(e) Designing, manufacturing and selling the Faucet with materials susceptible to dezincification;

(f) Designing, manufacturing and selling the Faucet with materials susceptible to stress corrosion cracking;

(g) Failing to design, manufacture and sell the Faucet with appropriate design and wall thickness for the material composition;

(h) Failing to design, manufacture and sell a faucet that would not fail when exposed to its expected and reasonably foreseeable environment;

(i) Failing to design, manufacture and sell a faucet that would not fail when exposed to water;

(j) Failing to design, construct, manufacture, inspect, assemble, distribute, sell and market the Faucet in a defect-free condition that would not fail after reasonable and foreseeable use; and

(k) Designing, manufacturing, inspecting, assembling, distributing, selling and marketing a defective product that Watermark knew, or reasonably should have known, exposed users to an unreasonable risk of harm.

44. Watermark is strictly liable for all damages caused by the Faucet.

45. As the direct and proximate result of the defective, unreasonably dangerous and unsafe condition of the Faucet, Plaintiff suffered over $600,000 in damages.

**WHEREFORE,** Foremost Insurance Group demands judgment against Watermark Fixtures LLC, jointly and severally, for damages in the amount of $631,393.59, together with interest, attorney's fees, costs of suit and other such relief deemed appropriate.

**COUNT II – STRICT LIABILITY**
**FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION**
*(Foremost v. Watermark)*

46. Foremost incorporates the allegations contained in the preceding paragraphs as if fully set forth at length herein.

47. The faucets that Watermark designed, manufactured and sold, including the Faucet, were unreasonably dangerous in their design and manufacture and such defects existed at the time of marketing.

48. Ms. Lohri was a member of the class of persons that Watermark should have reasonably foreseen as being subject to harms from the Faucet's defective condition.

49. At the time Watermark sold the Faucet, Watermark knew or should have known that the faucet contained a non-obvious and unreasonably dangerous condition, which the consumer would not comprehend without adequate warnings and instructions.

50. Watermark knew or should have known that the Faucet was highly susceptible to failure under expected installation and use conditions and that consumers, including Ms. Lohri, would not replace the Faucet without adequate warnings and instructions.

51. Watermark knew that consumers, including Ms. Lohri, would use the Faucet without first inspecting its durability and functionality for its intended purpose.

52. Watermark failed to inform consumers, including Ms. Lohri, of the Faucet's susceptibility to sudden catastrophic failure.

53. Had Ms. Lohri been adequately warned and instructed concerning the defects with the Faucet or the likelihood that it would fail, she would have taken steps to avoid the harm by replacing the Faucet or by not using Watermark's product in the first place.

54. Furthermore, after actively learning that its brass faucets were suddenly failing due to design defects, Watermark had a post-sale duty to warn consumers of the probability that catastrophic failure and flooding could result from continued use of their defective faucets.

55. Had Watermark done so, this loss would have been avoided.

56. Watermark is strictly liable for the damages sustained because of its failure to warn and instruct regarding the Faucet's defective and unreasonably dangerous condition, both pre- and post- sale, including but not limited to one or more of the following ways:

(a) Failing to warn consumers that the Faucet is susceptible to dezincification and stress corrosion cracking;

(b) Failing to warn consumers that the Faucet will reach the end of its useful life by catastrophically failing;

(c) Failing to warn consumers that the Faucet could not be used with water;

(d) Failing to post-sale warn consumers that the Faucet was defective and presented a serious risk of failure;

(e) Failing to warn purchasers and users that the Faucet's barb connector could fail within the useful life of the plumbing fixture to which it supplied water;

(f) Failing to instruct consumers on how to inspect and service the Faucet to prevent failure and water loss; and

(g) Failing to warn and instruct purchasers and users of the Faucet in other ways, under the circumstances.

57. As a direct and proximate result of Watermark's failure to warn and instruct consumers, Plaintiff suffered over $600,000 in damages.

**WHEREFORE,** Foremost Insurance Group demands judgment against Watermark Fixtures LLC, jointly and severally, for damages in the amount of $631,393.59, together with interest, attorney's fees, costs of suit and other such relief deemed appropriate.

**COUNT III – NEGLIGENCE**
*(Foremost v. Watermark)*

58. Foremost incorporates the allegations contained in the preceding paragraphs as if fully set forth at length herein.

59. Watermark had a duty to use reasonable care in designing, manufacturing and selling the Faucet in a condition that was safe for ordinary and reasonably foreseeable uses.

60. In addition, Watermark had a duty to warn consumers of the Faucet's defective design and propensity for failure.

61. Watermark's duty extends to all reasonably foreseeable purchasers, users, installers and consumers of the Faucet, including Ms. Lohri.

62. Watermark acting by and through its employees, agents, servants and representatives, all acting within the course, scope, and authority of their employment, breached its duty including but not limited to one or more of the following ways:

(a) Selling a non-dezincification-resistant brass faucet for use within waterways;

(b) Designing, manufacturing and selling the Faucet with a brass alloy containing 39% zinc;

(c) Designing, manufacturing and selling the Faucet without additives or metals to prevent dezincification and stress corrosion cracking;

(d) Designing, manufacturing and selling the Faucet in a condition susceptible to corrosion during normal and expected use;

(e) Designing, manufacturing and selling the Faucet with materials susceptible to dezincification;

(f) Designing, manufacturing and selling the Faucet with materials susceptible to stress corrosion cracking;

(g) Failing to design, manufacture and sell the Faucet with appropriate design and wall thickness for the material composition;

(h) Failing to design, manufacture and sell a faucet that would not fail when exposed to its expected and reasonably foreseeable environment;

(i) Failing to design, manufacture and sell a faucet that would not fail when exposed to water;

(j) Failing to design, construct, manufacture, inspect, assemble, distribute, sell and market the Faucet in a defect-free condition that would not fail after reasonable and foreseeable use; and

(k) Designing, manufacturing, inspecting, assembling, distributing, selling and marketing a defective product that Watermark knew, or reasonably should have known, exposed users to an unreasonable risk of harm.

63. It should not have sold a faucet made of a brass alloy containing 39% zinc.

64. A defect in the Faucet was a substantial factor in the water loss at the Property and, but for the existence of a defect, the water loss would not have occurred.

65. As a direct and proximate result of Watermark's negligence, Plaintiff suffered damages of over $600,000.

**WHEREFORE**, Foremost Insurance Group demands judgment against Watermark Fixtures LLC, jointly and severally, for damages in the amount of $631,393.59, together with interest, attorney's fees, costs of suit and other such relief deemed appropriate.

**COUNT IV – NEGLIGENCE**
**FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION**
*(Foremost v. Watermark)*

66. Foremost incorporates the allegations contained in the preceding paragraphs as if fully set forth at length herein.

67. Watermark had a duty to use reasonable care in designing, manufacturing and selling the Faucet in a condition that was safe for ordinary and reasonably foreseeable uses.

68. Ms. Lohri was a member of the class of persons that Watermark should have reasonably foreseen as being subject to harms from the Faucet's defective condition.

69. At the time Watermark sold the Faucet, Watermark knew or should have known that the faucet contained a non-obvious and unreasonably dangerous condition, which the consumer would not comprehend without adequate warnings and instructions.

70. Watermark knew or should have known that the Faucet was highly susceptible to failure under expected installation and use conditions and that consumers, including Ms. Lohri, would not replace the Faucet without adequate warnings and instructions.

71. Watermark knew that consumers, including Ms. Lohri, would use the Faucet without first inspecting its durability and functionality for its intended purpose.

72. Watermark failed to inform consumers, including Ms. Lohri, of the Faucet's susceptibility to sudden catastrophic failure.

73. Had Ms. Lohri been adequately warned and instructed concerning the defects with the Faucet or the likelihood that it would fail, she would have taken steps to avoid the harm by replacing the Faucet or by not using Watermark's product in the first place.

74. Furthermore, after actively learning that its brass faucets were suddenly failing due to design defects, Watermark had a post-sale duty to warn consumers of the probability that catastrophic failure and flooding could result from continued use of their defective faucets.

75. Had Watermark done so, this loss would have been avoided.

76. Watermark is negligent for the damages sustained because of its failure to warn and instruct regarding the Faucet's defective and unreasonably dangerous condition, both pre- and post- sale, including but not limited to one or more of the following ways:

(a) Failing to warn consumers that the Faucet is susceptible to dezincification and stress corrosion cracking;

(b) Failing to warn consumers that the Faucet will reach the end of its useful life by catastrophically failing;

(c) Failing to warn consumers that the Faucet could not be used with water;

(d) Failing to warn purchasers and users that the Faucet could fail within the useful life of the plumbing fixture to which it supplied water;

(e) Failing to instruct consumers on how to inspect and service the Faucet to prevent failure and water loss; and

(f) Failing to warn and instruct purchasers and users of the Faucet in other ways, under the circumstances.

77. As a direct and proximate result of Watermark's failure to warn and instruct consumers, Plaintiff suffered over $600,000 in damages.

**WHEREFORE**, Foremost Insurance Group demands judgment against Watermark Fixtures LLC, jointly and severally, for damages in the amount of $631,393.59, together with interest, attorney's fees, costs of suit and other such relief deemed appropriate.

**COUNT V – BREACH OF WARRANTY**
*(Foremost v. Watermark)*

78. Foremost incorporates the allegations contained in the preceding paragraphs as if fully set forth herein

79. Watermark sold the Faucet in a defective condition.

80. Watermark knew or with reasonable diligence would have known that the Faucet was not merchantable, fit for ordinary use and fit for the particular purpose for which the Faucet was intended.

81. Despite this, Watermark impliedly and expressly warranted that the Faucet was merchantable, fit for ordinary use and fit for the particular purpose for which the Faucet was intended.

82. Watermark impliedly and expressly warranted that the Faucet was safe, functional and free from defects.

83. Watermark warranted that the Faucet could be used with water, despite it being made from a brass containing 39% zinc—which is a type of brass that cannot be used with water.

84. Purchasers, users, installers and consumers, including Ms. Lohri, reasonably relied on Watermark's express and implied warranties.

85. Watermark breached its express and implied warranties by selling a Faucet that was defective and unreasonably dangerous and not merchantable, fit for ordinary use or the foreseeable purpose for which the faucet was intended, *i.e.*, transporting water.

86. As a direct and proximate result of Watermark's breach of its warranties, Plaintiff suffered damages of over $600,000.

**WHEREFORE**, Foremost Insurance Group demands judgment against Watermark Fixtures LLC, jointly and severally, for damages in the amount of $631,393.59, together with interest, attorney's fees, costs of suit and other such relief deemed appropriate.

## COUNT VI –STRICT LIABILITY
## DESIGN AND MANUFACTURING DEFECT
*(Foremost v. Amazon)*

87. Foremost incorporates the allegations contained in the preceding paragraphs as if fully set forth at length herein.

88. Amazon was and remains engaged in the business of, *inter alia*, selling and otherwise placing into the stream of commerce water faucets, including the Faucet.

89. Amazon knew the Faucet would be used by members of the general public and knew of the specific purposes for which the Faucet would be utilized.

90. However, the Faucet was not fit for its intended and reasonably foreseeable use.

91. Amazon sold the Faucet in an unreasonably dangerous and defective condition.

92. The Faucet was not modified, changed or materially altered after leaving the custody or control of Amazon.

93. Amazon knew or should have known that the Faucet would reach the end user without substantial change in the condition in which it was originally sold and the Faucet ultimately reached the user in this condition.

94. At all times prior to the incident, the Faucet was used in a normal, ordinary and reasonably foreseeable manner.

95. The defective condition of the Faucet was the direct and proximate cause of the water loss and resulting damage sustained by Ms. Lohri, for which Amazon, acting by and through its employees, agents, servants, representatives and other designees, each of whom was working within the course and scope of their employment and/or authority for which Amazon is strictly liable by reason of, *inter alia*:

(a) Selling a non-dezincification-resistant brass faucet for use within waterways;

(b) Selling the Faucet with a brass alloy containing 39% zinc;

(c) Selling the Faucet without additives or metals to prevent dezincification and stress corrosion cracking;

(d) Selling the Faucet in a condition susceptible to corrosion during normal and expected use;

(e) Selling the Faucet with materials susceptible to dezincification;

(f) Selling the Faucet with materials susceptible to stress corrosion cracking;

(g) Failing to sell the Faucet with appropriate design and wall thickness for the material composition;

(h) Failing to sell a faucet that would not fail when exposed to its expected and reasonably foreseeable environment;

(i) Failing to sell a faucet that would not fail when exposed to water;

(j) Failing to sell and market the Faucet in a defect-free condition that would not fail after reasonable and foreseeable use; and

(k) Selling and marketing a defective product that Amazon knew, or reasonably should have known, exposed users to an unreasonable risk of harm.

96. Amazon is strictly liable for all damages caused by the Faucet.

97. As the direct and proximate result of the defective, unreasonably dangerous and unsafe condition of the Faucet, Plaintiff suffered over $600,000 in damages.

**WHEREFORE**, Foremost Insurance Group demands judgment against Amazon.com, Inc., jointly and severally, for damages in the amount of $631,393.59, together with interest, attorney's fees, costs of suit and other such relief deemed appropriate.

**COUNT VII – STRICT LIABILITY**
**FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION**
*(Foremost v. Amazon)*

98. Foremost incorporates the allegations contained in the preceding paragraphs as if fully set forth at length herein.

99. The Watermark faucets that Amazon sold, including the Faucet, were unreasonably dangerous in their design and manufacture and such defects existed at the time of marketing.

100. Ms. Lohri was a member of the class of persons that Amazon should have reasonably foreseen as being subject to harms from the Faucet's defective condition.

101. At the time Amazon sold the Faucet, Amazon knew or should have known that the faucet contained a non-obvious and unreasonably dangerous condition, which the consumer would not comprehend without adequate warnings and instructions.

102. Amazon knew or should have known that the Faucet was highly susceptible to failure under expected installation and use conditions and that consumers, including Ms. Lohri, would not replace the Faucet without adequate warnings and instructions.

103. Amazon knew that consumers, including Ms. Lohri, would use the Faucet without first inspecting its durability and functionality for its intended purpose.

104. Amazon failed to inform consumers, including Ms. Lohri, of the Faucet's susceptibility to sudden catastrophic failure.

105. Had Ms. Lohri been adequately warned and instructed concerning the defects with the Faucet or the likelihood that it would fail, she would have taken steps to avoid the harm by replacing the Faucet or by not using Amazon's product in the first place.

106. Furthermore, after actively learning that its brass faucets were suddenly failing due to design defects, Amazon had a post-sale duty to warn consumers of the probability that catastrophic failure and flooding could result from continued use of their defective faucets.

107. Had Amazon done so, this loss would have been avoided.

108. Amazon is strictly liable for the damages sustained because of its failure to warn and instruct regarding the Faucet's defective and unreasonably dangerous condition, both pre- and post- sale, including but not limited to one or more of the following ways:

(a) Failing to warn consumers that the Faucet is susceptible to dezincification and stress corrosion cracking;

(b) Failing to warn consumers that the Faucet will reach the end of its useful life by catastrophically failing;

(c) Failing to warn consumers that the Faucet could not be used with water;

(d) Failing to post-sale warn consumers that the Faucet was defective and presented a serious risk of failure;

(e) Failing to warn purchasers and users that the Faucet's barb connector could fail within the useful life of the plumbing fixture to which it supplied water;

(f) Failing to instruct consumers on how to inspect and service the Faucet to prevent failure and water loss; and

(g) Failing to warn and instruct purchasers and users of the Faucet in other ways, under the circumstances.

109. As a direct and proximate result of Amazon's failure to warn and instruct consumers, Plaintiff suffered over $600,000 in damages.

**WHEREFORE**, Foremost Insurance Group demands judgment against Amazon.com, Inc., jointly and severally, for damages in the amount of $631,393.59, together with interest, attorney's fees, costs of suit and other such relief deemed appropriate.

**COUNT VIII – NEGLIGENCE**
*(Foremost v. Amazon)*

110. Foremost incorporates the allegations contained in the preceding paragraphs as if fully set forth at length herein.

111. Amazon had a duty to use reasonable care in selling the Faucet in a condition that was safe for ordinary and reasonably foreseeable uses.

112. In addition, Amazon had a duty to warn consumers of the Faucet's defective design and propensity for failure.

113. Amazon's duty extends to all reasonably foreseeable purchasers, users, installers and consumers of the Faucet, including Ms. Lohri.

114. Amazon acting by and through its employees, agents, servants and representatives, all acting within the course, scope, and authority of their employment, breached its duty including but not limited to one or more of the following ways:

(a) Selling a non-dezincification-resistant brass faucet for use within waterways;

(b) Selling the Faucet with a brass alloy containing 39% zinc;

(c) Selling the Faucet without additives or metals to prevent dezincification and stress corrosion cracking;

(d) Selling the Faucet in a condition susceptible to corrosion during normal and expected use;

(e) Selling the Faucet with materials susceptible to dezincification;

(f) Selling the Faucet with materials susceptible to stress corrosion cracking;

(g) Failing to sell the Faucet with appropriate design and wall thickness for the material composition;

(h) Failing to sell a faucet that would not fail when exposed to its expected and reasonably foreseeable environment;

(i) Failing to sell a faucet that would not fail when exposed to water;

(j) Failing to sell and market the Faucet in a defect-free condition that would not fail after reasonable and foreseeable use; and

(k) Selling and marketing a defective product that Amazon knew, or reasonably should have known, exposed users to an unreasonable risk of harm.

115. It should not have sold a faucet made of a brass alloy containing 39% zinc.

116. A defect in the Faucet was a substantial factor in the water loss at the Property and, but for the existence of a defect, the water loss would not have occurred.

117. As a direct and proximate result of Amazon's negligence, Plaintiff suffered damages of over $600,000.

**WHEREFORE,** Foremost Insurance Group demands judgment against Amazon.com, Inc., jointly and severally, for damages in the amount of $631,393.59, together with interest, attorney's fees, costs of suit and other such relief deemed appropriate.

**COUNT IX – NEGLIGENCE**
**FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION**
*(Foremost v. Amazon)*

118. Foremost incorporates the allegations contained in the preceding paragraphs as if fully set forth at length herein.

119. Amazon had a duty to use reasonable care in selling the Faucet in a condition that was safe for ordinary and reasonably foreseeable uses.

120. Ms. Lohri was a member of the class of persons that Amazon should have reasonably foreseen as being subject to harms from the Faucet's defective condition.

121. At the time Amazon sold the Faucet, Amazon knew or should have known that the faucet contained a non-obvious and unreasonably dangerous condition, which the consumer would not comprehend without adequate warnings and instructions.

122. Amazon knew or should have known that the Faucet was highly susceptible to failure under expected installation and use conditions and that consumers, including Ms. Lohri, would not replace the Faucet without adequate warnings and instructions.

123. Amazon knew that consumers, including Ms. Lohri, would use the Faucet without first inspecting its durability and functionality for its intended purpose.

124. Amazon failed to inform consumers, including Ms. Lohri, of the Faucet's susceptibility to sudden catastrophic failure.

125. Had Ms. Lohri been adequately warned and instructed concerning the defects with the Faucet or the likelihood that it would fail, she would have taken steps to avoid the harm by replacing the Faucet or by not using Amazon's product in the first place.

126. Furthermore, after actively learning that its brass faucets were suddenly failing due to design defects, Amazon had a post-sale duty to warn consumers of the probability that catastrophic failure and flooding could result from continued use of their defective faucets.

127. Had Amazon done so, this loss would have been avoided.

128. Amazon is negligent for the damages sustained because of its failure to warn and instruct regarding the Faucet's defective and unreasonably dangerous condition, both pre- and post- sale, including but not limited to one or more of the following ways:

(a) Failing to warn consumers that the Faucet is susceptible to dezincification and stress corrosion cracking;

(b) Failing to warn consumers that the Faucet will reach the end of its useful life by catastrophically failing;

(c) Failing to warn consumers that the Faucet could not be used with water;

(d) Failing to warn purchasers and users that the Faucet could fail within the useful life of the plumbing fixture to which it supplied water;

(e) Failing to instruct consumers on how to inspect and service the Faucet to prevent failure and water loss; and

(f) Failing to warn and instruct purchasers and users of the Faucet in other ways, under the circumstances.

129. As a direct and proximate result of Amazon's failure to warn and instruct consumers, Plaintiff suffered over $600,000 in damages.

**WHEREFORE**, Foremost Insurance Group demands judgment against Amazon.com, Inc., jointly and severally, for damages in the amount of $631,393.59, together with interest, attorney's fees, costs of suit and other such relief deemed appropriate.

**COUNT X – BREACH OF WARRANTY**
*(Foremost v. Amazon)*

130. Foremost incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

131. Amazon sold the Faucet in a defective condition.

132. Amazon knew or with reasonable diligence would have known that the Faucet was not merchantable, fit for ordinary use and fit for the particular purpose for which the Faucet was intended.

133. Despite this, Amazon impliedly and expressly warranted that the Faucet was merchantable, fit for ordinary use and fit for the particular purpose for which the Faucet was intended.

134. Amazon impliedly and expressly warranted that the Faucet was safe, functional and free from defects.

135. Amazon warranted that the Faucet could be used with water, despite it being made from a brass containing 39% zinc—which is a type of brass that cannot be used with water.

136. Purchasers, users, installers and consumers, including Ms. Lohri, reasonably relied on Amazon's express and implied warranties.

137. Amazon breached its express and implied warranties by selling a Faucet that was defective and unreasonably dangerous and not merchantable, fit for ordinary use or the foreseeable purpose for which the faucet was intended, *i.e.*, transporting water.

138. As a direct and proximate result of Amazon's breach of its warranties, Plaintiff suffered damages of over $600,000.

**WHEREFORE**, Foremost Insurance Group demands judgment against Amazon.com, Inc., jointly and severally, for damages in the amount of $631,393.59, together with interest, attorney's fees, costs of suit and other such relief deemed appropriate.

Respectfully submitted,

/s Robert D. Anbinder
ROBERT D. ANBINDER, Esquire
CPF No.: 9212150014
P.O. Box 65354
Baltimore, Maryland 21209
Telephone: 410-916-7469
E-mail: rdaattorney@gmail.com

*Attorney for Plaintiff*

**IN THE CIRCUIT COURT FOR GARRETT COUNTY**

| | |
|---|---|
| FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN as subrogee of COURTNEY LOHRI, affiliates of those company and any other entity that has received, directly or indirectly, benefits under Policy Number 5010133010<br><br>Plaintiff,<br><br>v.<br><br>WATERMARK FIXTURES LLC<br>219 West First Street<br>Crowley, LA 70526<br><br>AMAZON.COM, INC.<br>410 Terry Avenue North<br>Seattle, WA 98109<br><br>Defendants. | Case No.: |

**JURY DEMAND**

Foremost respectfully requests trial by jury as to all issues presented in this matter.

Respectfully submitted,

/s Robert D. Anbinder
ROBERT D. ANBINDER, Esquire
CPF No.: 9212150014
P.O. Box 65354
Baltimore, Maryland 21209
Telephone: 410-916-7469
E-mail: rdaattorney@gmail.com

*Attorney for Plaintiff*

ROBERT D. ANBINDER, Esquire
P.O. Box 65354
Baltimore, Maryland 21209

CERTIFIED MAIL®

7017 2400 0000 0294 0150

Retail

RDC 99

98501

U.S. POSTAGE PAID
FCM LG ENV
BALTIMORE, MD 212 9
MAR 29, 2024

$10.64

R2305K132060-25

AMAZON.COM, INC.
**Serve on:**
Corporation Services Company, Res. Agt.
300 Deschutes Way SW
Suite 208 MC-CSC1
Tumwater, WA 98501